UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL BUTCHER,            )
                           )   Civil Action No. 01 - 1505
          Plaintiff,       )
                           )   Magistrate Judge Lisa Pupo Lenihan
          v.               )
                           )
DRAVO CORP., *et al.*       )   Doc. No. 143
                           )
          Defendants.      )
                           )

## OPINION

LENIHAN, M.J.

Currently before the Court for disposition is Price Inland's Motion for Summary Judgment (Doc. No. 143) as to the Dravo parties' contractual indemnity claims against it.

## I.      STATEMENT OF RELEVANT FACTS

As the Court writes only for the parties, and the facts have been previously set forth at length in the Court's Opinion dated March 25, 2009 (Doc. No. 123), only those facts relevant to the pending motion will be set forth here.

The relevant facts are not disputed.  On October 5, 1999, the Plaintiff, Michael Butcher, was employed by Price Inland ("Price") as a longshoreman when he was injured while unloading a barge that Price had contracted with Dravo Lime Company ("Dravo Lime") to unload.  The terms of the contractual relationship between Price and Dravo Lime are set forth in the Amended and Restated Terminaling Agreement ("Terminaling Agreement") dated March 1, 1999.  (Ex. A to Price's Mem. in Supp. of Mot. for Summ. J. (Doc. No. 144-2).)  At issue is the contractual indemnity provision contained in Article Thirteen of the Terminaling Agreement,  which provides:

> Price shall protect, hold harmless, defend and indemnify Dravo Lime, its affiliated companies, customers, agents, servants, employees, contractors and subcontractors from and against all claims, penalties, fines, assessments, liabilities and expenses, in any way arising out of (i) any claims for death or injury to persons or property, or (ii) any claim of breach of any requirement imposed by any federal, state or local governmental authority, whether judicial, administrative or legislative, arising out of any act or omission of Price, its agents, servants, employees, contractors and subcontractors or out of the performance of work pursuant to this Agreement, except as may be caused by the sole negligence of Dravo Lime, its agents, servants or employees.

*See* Terminaling Agreement, Art. 13, at 6-7.  In addition, the Terminaling Agreement contains a choice of law provision designating Ohio law as the governing law of choice.  *Id.*, Art. 26, at 12.

In its Third-Party Complaint filed in Civil Action No. 02-1157, Dravo Lime filed a claim for contractual indemnity against Price based on the indemnification provision contained in Article 13. Price has moved for summary judgment on this claim,[1] asserting that as a matter of law, Dravo Lime's contractual indemnity claim must fail.  As Price's  motion for summary judgment has been fully briefed and responded to by the parties,[2] this motion is ripe for disposition.

## II.   <u>STANDARD OF REVIEW - MOTION FOR SUMMARY JUDGMENT</u>

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to

---

1.  Although the Court notes the untimeliness of Price's motion, it nonetheless granted Price leave to file this motion, as it involves purely a question of law which would have to be resolved in any event, and thus, will allow for the expeditious administration of this case going forward.

2.  Although not parties to the Terminaling Agreement, American Commercial Lines LLC ("ACL") and American Commercial Barge Line LLC ("ACBL") have also filed a Memorandum of Law in opposition to Price's second motion for summary judgment (Doc. No. 145) and a surreply (Doc. No. 150), which the Court has also taken into consideration in ruling on the pending motion.

judgment as a matter of law." Fed. R. Civ. P. 56 (c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

More specifically, the moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.   ANALYSIS

In support of its motion for summary judgment, Price submits that the subject indemnification provision is insufficiently specific to waive its immunity under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 904, 905(a) & (b) (1984). Accordingly, Price maintains that the exclusivity provision of the LHWCA, section 905(a), precludes the application of the indemnity provision contained in the Terminaling Agreement, and therefore, the contractual indemnity claims of the Dravo parties fail as a matter of law.

### A.   Applicable Law

As a preliminary matter, the Court notes that both Price and Dravo Lime submit that Ohio law governs the legal issue presented here pursuant to the choice of law provision contained in

Article Twenty-Six of the Terminaling Agreement.  The Dravo parties take issue, however, with the authority cited by Price, which includes decisional law from jurisdictions both inside and outside of Ohio.

It is well established that "[i]ndemnity clauses in maritime contracts are typically construed under maritime law because of the federal interest in maintaining a uniform body of maritime law and because states 'do not have an extensive regulatory interest in contracts of indemnity.'" *Stoot v. Fluor Drilling Serv., Inc.,* 851 F.2d 1514, 1518 (5th Cir. 1988) (quoting *O'Dell v. North River Ins. Co.,* 614 F.Supp. 1556, 1559 (W.D.La. 1985)).  Nonetheless, where a choice of law provision mandates the application of state law, and a strong public policy favoring application of the state law and a substantial relationship to either the parties of the transaction exist, then state law will govern absent a countervailing federal interest.  *Id.*  In other words, under admiralty law, the state law designated by the parties to govern their contract will be applied unless either "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of the jurisdiction which would provide the rule of decision for the particular issue involved in the absence of an effective contrary choice of law by the parties." *Hale v. Co-Mar Offshore Corp.,* 588 F.Supp. 1212, 1215 (W.D.La. 1984) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1971) (other citation omitted)).

Price contends that Ohio clearly has a "substantial relationship" to both the parties and the transaction, since Price is an Ohio company and the Terminaling Agreement expressly pertains to delivery of lime to a company located in Coshocton County, Ohio.  (Price's Mem. of Law in Supp. of Summ. J. (Doc. 144) at 3.)  The Dravo parties do not dispute this point, as it is clear that a

substantial relationship exists between Ohio and the parties to the Terminaling Agreement.

As to the second possible basis for declining to apply state law, the jurisdiction which would provide the rule of decision for the particular issue involved in the absence of an effective contrary choice of law by the parties would be federal maritime law. A contract for stevedoring services, like the Terminaling Agreement, is a maritime contract, *American Stevedores v. Porello,* 330 U.S. 446, 456 (1947), and as such, is governed by federal maritime law. Thus, in the case at bar, Ohio law will be applied to determine the enforceability and terms of the indemnity provision in the Terminaling Agreement to the extent that it does not conflict with federal maritime law.

Price submits that Ohio law does not conflict with the fundamental purposes of federal maritime law or, for that matter, with Pennsylvania law, and the laws of all three jurisdictions "hold that in order for an otherwise immune employer to be held liable for contractual indemnification arising out of injuries to its own employee, '[t]he intent to indemnify against claims by employees of the alleged indemnitor must clearly appear from the terms of the agreement.'" (Doc. 144 at 3-4 (quoting *Passman v. Rigging Int'l, Inc.*, No. Civ.A. 98-4953, 1999 WL 387279, *5 (E.D.Pa. Jun. 8, 1999) (applying both Pennsylvania and maritime law)).[3] According to Price, both Ohio and federal maritime law hold that in order to waive the immunity otherwise afforded to an employer under the

_____

3. In support, Price also cites *Snare v. Ebensburg Power Co.,* 637 A.2d 296, 298 (Pa. Super. Ct. 1993); *Bester v. Essex Crane Rental Corp.,* 619 A.2d 304, 307 (Pa. Super. Ct. 1993); *Kendall v. U.S. Dismantling Co.,* 485 N.E.2d 1047, 1051 (Ohio 1985); *Lamb v. Summit Mall,* No. 20777, 2002 WL 533477, *2 n. 2 (Ct. App. Ohio Apr. 10, 2002) (J. Whitmore, concurring). Price further notes that even if the court determined that federal maritime law applied here rather than Ohio law, federal maritime law precisely mirrors state law on this issue. According to Price, this is because state law often serves as a source, if not the sole source in some instances, of federal maritime law when guidance is needed. In support, Price cites Thomas J. Schoenbaum, 1 ADMIRALTY & MARITIME LAW §§ 4-1 & 4-2 (4th ed. 2004); *E. River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 864-65 (1986) ("Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules.")

Ohio workers' compensation statute or the LHWCA, broad words of general import are insufficient, and require instead a clear and unequivocal indemnification provision expressly extending to the employer's own employees.

In response, the Dravo parties counter that applicable Ohio law directly contradicts Price's arguments, and in fact, supports their position.  In so arguing, the Dravo parties point out that the Ohio cases relied upon by Price are distinguishable, and therefore, are inapposite,[4] which may explain why Price relies on Pennsylvania cases.  The Dravo parties further argue that *Corbitt*[5] and *Foreman*,[6] the two cases from the United States Court of Appeals for the Fifth Circuit cited by Price, do not support the proposition for which Price cites them.  Rather, the Dravo parties argue that *Corbitt* and *Foreman* actually support enforcement of their indemnity claims.  In addition, the Dravo parties submit that contrary to Price's argument, Ohio law does not require that contracts purporting to hold an indemnitee harmless for its own negligence contain express language to that effect.  In support of that argument, the Dravo parties rely primarily on *Coulter v. Dayton Power & Light Company,* 134 Ohio App. 3d 620, 731 N.E.2d 1172 (Ohio Ct. App. 1999); *Glaspell v. Ohio Edison Company,* 29 Ohio St. 3d 44, 505 N.E.2d 264 (Ohio Ct. App. 1987); and *Bank One v. Echo Acceptance Corporation,* 522 F.Supp. 2d 959 (S.D.Ohio 2007).

In further response, the Dravo parties contend that under federal maritime law, third party

---

4. For example, the Dravo parties contend that *Kendall* involved an Ohio construction project and a specific provision of Ohio construction law applicable to agreements and simply has no applicability to a longshoreman.  The Dravo parties contend that similarly, *Lamb* involved a construction project, but the only question before the court was whether the Ohio indemnity claim was moot.  Moreover, the Dravo parties contend that the language in *Lamb* upon which Price relies is not only irrelevant to the issues presented here, but is merely *dicta*, in a dissenting opinion.

5. *Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329 (5th Cir. 1981).

6. *Foreman v. Exxon Corp.,* 770 F.2d 490 (5th Cir. 1985).

complaints based on express indemnity contracts between the stevedore employer and a non-vessel third party are not on account of injury to the employee, and thus, are not barred by Section 905(b) of the LHWCA, citing in support *M-I L.L.C. v. Masse Contracting, Inc.,* Civ.A.No. 06-5730, 2008 WL 754849 (E.D.La. Mar. 18, 2008).  Moreover, the Dravo parties argue that similar to Ohio law, federal maritime law does not require specific language in an indemnity contract with a  non-vessel third party to waive immunity under the LHWCA, citing in support *Tran v. Manitowoc Engineering Company,* 767 F.2d 223 (5th Cir. 1985); *Dinh v. American Freedom Vessel,* 155 Fed. Appx. 137 (5th Cir. Nov. 17, 2005); and *Sumrall v. Ensco Offshore Company,* 291 F.3d 316 (5th Cir. 2002).  The Dravo parties submit that the language in the indemnity provisions in *Tran* and *Dinh* was more general than the language of the indemnity provision in the Terminaling Agreement in this case,[7] and the courts in *Tran* and *Dinh* found the language sufficient to require indemnity.   Finally, the Dravo parties contend that contrary to Price's argument, public policy does not prevent the enforcement of the indemnity provision in the Terminaling Agreement, citing in support *Olsen v. Shell Oil Company,* 595 F.2d 1099 (5th Cir. 1979).

Similar to the Dravo Parties, ACL/ACBL argue that the Ohio and Pennsylvania workers' compensation statutes and the cases interpreting them have no application to this case, which arises under the exclusive jurisdiction of the LHWCA.  Specifically, ACL/ACBL submit that neither *Passman* nor *Kendall,* upon which Price primarily relies, support Price's position that to effectively waive LHWCA immunity, the indemnity  provision must expressly mention claims by the

---

7. According to the Dravo parties, the indemnity provision at issue here provides, in essence, that "Price has agreed to hold Dravo harmless from all claims for death, personal injury or property damage arising from any act or omission of Price or arising from the performance of the work required to be done under the Agreement."  (Doc. No. 151 at 8.)  The Dravo parties maintain that nothing in this language is unspecific or unclear.

indemnitor's employees.  ACL/ACBL contend that the court's discussion in *Passman* of whether the immunity provision was sufficiently specific under Pennsylvania law was merely *dicta,* since the pleadings did not indicate that the employer had met the prerequisite for invoking workers' compensation immunity–*i.e.,* payment of workers' compensation benefits.  With regard to *Kendall,* ACL/ACBL submit that decision did not even involve a maritime injury and thus, did not implicate the LHWCA at all.  In any event, ACL/ACBL submit that *Passman* and *Kendall* are inapposite because state workers' compensation laws do not have concurrent jurisdiction with the LHWCA, where the injured employee was engaged in traditional maritime activities such as longshoring, and where the injury occurred on a vessel over navigable waters as opposed to on land.[8]  Moreover, according to ACL/ACBL, numerous courts applying federal maritime law have held that the LHWCA does indeed permit the type of contractual indemnity claim involved in this case.[9]

After a thorough review of the cited authority and its own independent research, the Court finds that Price's argument is flawed in several respects.  First, there is simply no support in either Ohio jurisprudence or federal maritime law for extrapolating the requirement for effectively waiving employer immunity under the Ohio workers' compensation statute to indemnity contracts in the LHWCA context.  Under Ohio law, an employer who has satisfied the requirements of the Ohio

_____

8.  In support, ACL/ACBL cite *Noah v. Liberty Mut. Ins. Co.,* 267 F.2d 218, 219 (5th Cir. 1959); *Wellsville Terminals Co. v. Workmen's Comp. App. Bd. (Zacharias),* 632 A.2d 1305, 1308 (Pa. 1993); *Uphold v. Ill. Workers' Comp. Comm'n,* 896 N.E.2d 828, 842 (Ill. Ct. App. 2008); *Wells v. Indus. Comm'n,* 660 N.E.2d 229 (Ill. Ct. App. 1995).

9.  In support of their position, ACL/ACBL rely primarily on *Tran v. Manitowoc Engineering Company,* 767 F.2d 233, 229 (5th Cir. 1985), a decision applying federal maritime law to the issue of whether a stevedore employer could waive its LHWCA immunity in an indemnity contract with a non-vessel third party, but applying Louisiana law to determine the scope of the indemnity provision.  Despite the parties' selection of Ohio law to govern the indemnity provision in the Terminaling Agreement, ACL/ACBL does not cite any cases applying Ohio law on the enforceability or scope of indemnity agreements.

8

workers' compensation laws receives statutory and constitutional immunity from suit arising out of

the employment.  *Kendall v.  U.S. Dismantling Co.,* 20 Ohio St. 3d 61, 64-65, 485 N.E.2d 1047,

1050-51 (Ohio 1985) (citing Ohio R.C. § 4123.74, and Section 35, Art. II, Ohio Constitution).[10]  In

order to effectively waive this statutory and constitutional immunity in an indemnity agreement with

a third party, the employer of an injured person must specifically refer to the immunity arising from

the Ohio workers' compensation statute and constitutional provision.  *Id.* at 65, 485 N.E.2d at 1051.

In the case at bar, there is simply no evidence that Price's injured employee, Butcher, applied for

and/or received Ohio workers' compensation benefits.  Indeed, the parties appear to concede that

---

10.  The statutory immunity, which is codified at R.C. § 4123.74, provides:
>  Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval of time in which such employer is permitted to pay such compensation directly to his injured employees or the dependents of his killed employees, whether or not such injury, occupational disease, bodily condition, or death is compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code.

The constitutional provision providing immunity states, in relevant part:
>  For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workman's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease.

Section 35, Art. II, of the Ohio Constitution

Butcher applied for and received only LHWCA benefits.[11]  Therefore, since Price did not pay Butcher any benefits under the Ohio workers' compensation laws, the statutory and constitutional immunity that derives therefrom would not be implicated here.  Accordingly, since Price never received Ohio statutory and constitutional immunity, there was no need to expressly waive it in the indemnity agreement.

Second, to the extent Price argues that *Kendall* supports the requirement of an express reference to the employer's LHWCA immunity in the indemnity provision to effectively waive that immunity, Price's reliance on *Kendall* is misplaced.  In *Kendall*, the indemnity provision was contained in a construction contract between an employer who paid benefits under the Ohio workers' compensation statute and a third party.  The Ohio Supreme Court invalidated the indemnity clause on two fronts:  (1) the indemnity provision in a construction-related contract, which absolved the promissee of damages resulting from promissee's own negligence, whether sole or concurrent, was void as against public policy and prohibited by statute in Ohio; and (2) the language of the

_____

11.  Because Butcher was engaged in a traditional maritime activity, i.e., longshoring, at the time of his injury, and it occurred on navigable waters, Butcher's exclusive remedy for workers' compensation benefits was under the LHWCA.  *Kelly v. Pittsburgh & Conneaut Dock Co.,* 900 F.2d 89, 90-91 (6th Cir. 1990) (citing *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 720 (1980)) (noting that the "extension of federal jurisdiction inland under the 1972 amendments to the LHWCA 'supplements, rather than supplants, state compensation law' so that a state's workers' compensation law coexists with the LHWCA for land-based injuries covered by the federal act); *Talik v. Fed. Marine Terminals, Inc.,* 117 Ohio St. 3d 496, 498, 885 N.E.2d 204, 206 (Ohio 2008).  In *Talik,* the Ohio Supreme Court found the plaintiff longshoreman was injured while working on land in a location that fell within the definition of "navigable waters" under the 1972 amendments to the LHWCA, and thus, was inside the "twilight zone," entitling him to apply for benefits under either the LHWCA or state workers' compensation statute. *Id.* "Twilight zone" refers to a "maritime but local" category created for workers who were injured in navigable waters but who were performing duties which were not traditionally maritime. *Davis v. Dep't of Labor & Indus. of Washington,* 317 U.S. 249, 252 & 258 (1942). This category was subsequently codified in the 1972 amendments to the LHWCA. In such cases, the LHWCA maintains concurrent jurisdiction with state workers' compensation laws, and any amounts paid to an employee under any state workers' compensation law shall be credited against any liability imposed under the LHWCA. *Talik,* 117 Ohio St. 3d at 498-99, 885 N.E.2d at 207 (citing 33 U.S.C. § 903(e)).

indemnity clause did not specifically refer to the employer's immunity under the Ohio workers' compensation statute and Ohio constitution.  20 Ohio St. 3d at 64-65, 485 N.E.2d at 1050-51. Unlike Ohio statutory and constitutional law, the LHWCA does not contain any such restrictions. Moreover, there are no reported cases decided by the Ohio Supreme Court, or any intermediate appellate court for that matter, applying the express waiver requirement in *Kendall* to an indemnity provision in a maritime contract involving the waiver of the employer's immunity under the LHWCA.  Based on the paucity of authority, the Court finds no basis for extrapolating the requirement for waiving an employer's statutory and constitutional immunity in indemnity contracts under Ohio law to compensation-paying employers under the LHWCA  Accordingly, *Kendall* and its progeny, upon which Price relies, are simply inapposite here because none of those cases involved an indemnity provision in a maritime contract where the employer's immunity was derived from payment of LHWCA benefits.

Finally, unlike Ohio law, there is no requirement under federal maritime law that in order to waive its workers' compensation immunity, the employer must specifically refer to it in the indemnity clause. Thus, Ohio law appears to conflict with federal maritime law on this issue, and therefore, must give way.  The Court's conclusion finds support in Ohio jurisprudence.  The Ohio appellate courts have  consistently applied  federal maritime law in the relatively few reported cases involving LHWCA claims.  *See, e.g., Talik v. Fed. Marine Terminals, Inc.,* 117 Ohio St. 3d 496, 885 N.E.2d 204 (Ohio 2008) (citing *Gravatt v. City of New York,* 226 F.3d 108, 118 (2d Cir. 2000)) (applying federal law to determine whether an intentional tort claim under Ohio law against an employer was excluded from the scope of the exclusive remedy provision of the LHWCA); *Addison v. Ohio River Co.,* 120 Ohio App. 3d 172, 177 & 179, 697 N.E.2d 260, 263 &  265 (Ohio Ct. App.

11

1997) (adopting Sixth Circuit's interpretation of what conduct gives rise to liability for breach of the *Ryan* warranty,[12] and holding federal maritime law applied to third party complaint in which shipowner asserted a breach of implied warranty/indemnity claim against third party operator of barge cleaning business); *Ode v. Luedtke Eng'g Co.,* No. 71473, 1997 WL 476830 (Aug. 21, 1997) (applying federal maritime law to employee's claim under LHWCA to determine whether vessel owner/employer was liable under dual capacity doctrine) .

Under federal maritime law, the exclusive remedy provision of the LHWCA provides in relevant part:

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, . . . and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death.

33 U.S.C. § 905(a) (1984). In essence, Section 905(a) prohibits claims for *tort*-based contribution or indemnity against the employer, once the employer has paid LHWCA benefits to the injured employee. Thomas J. Schoenbaum, ADMIRALTY & MARITIME LAW § 7-14 at 494-95 (4th ed. 2004) ("Schoenbaum");  *Gravatt v. City of New York,* No. 97 CIV. 0354 (RWS), 1998 WL 171491, *22 (S.D.N.Y. Apr. 10, 1998) (citing *Triguero v. Consol. Rail Corp.,* 932 F.2d 95, 98 (2d Cir. 1991)) (payment of LHWCA benefits forecloses tort-based contribution from employer).  However, a stevedore employer who has paid LHWCA benefits may waive its immunity under Section 905(a)

---

12. The *Ryan* warranty was first discussed in *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124 (1956), and refers to a warranty of workmanlike performance that arises from service and performance agreements under admiralty law.

by entering into an indemnity agreement, either expressly or by implication, with a third-party other than a vessel owner.  Schoenbaum, at 496 (citing *Pippen v. Shell Oil Co.,* 661 F.2d 378 (5th Cir. 1981); *Olsen v. Shell Oil Co.,* 595 F.2d 1099 (5th Cir. 1979); *Tran v. Manitowoc Eng'g Co.,* 767 F.2d 223 (5th Cir. 1985); *Avondale Shipyards, Inc. v. Insured Lloyd's,* 786 F.2d 1265 (5th Cir. 1986); *Smith v. United States,* 980 F.2d 1379 (11th Cir. 1993)); *see also Gravatt,* 1998 WL 171491, at *22. In *Pippen,* the court of appeals reasoned that a suit by a third party against an employer based on a contract of indemnity is not an action "on account of" the employee's injury, but rather, is an action "on account of" a contract of indemnity, and therefore, was not barred by Section 905(a).  661 F.2d at 386.  The third-party in *Pippen* was a non-vessel and therefore Section 905(b) did not preclude the indemnity agreement.  Thus, the court of appeals in *Pippen* held that a stevedore employer could waive its immunity under Section 905(a) by entering into a contract with a non-vessel third party. *Id.* at 386-88.  The court of appeals for the eleventh circuit reached a similar conclusion in *Smith.* 980 F.2d at 1381-82.

In the case at bar, Price has expressly contracted with Dravo Lime, a non-vessel, to indemnify Dravo Lime, and by doing so, has waived its immunity under Section 905(a).  In these circumstances, no magic words are required to waive the employer's LHWCA immunity, as it is the act of entering into the express contract with the non-vessel third party that effectively waives the immunity.  Thus, under federal maritime law, there is no requirement that the indemnity provision contain specific language waiving the employer's immunity from suit under the LHWCA. Accordingly, Price's argument that the indemnity provision is not sufficiently specific to waive its immunity under Section 905(a) of the LHWCA lacks merit.

13

B.      **The Scope of the Indemnity Provision**

The only issue remaining is whether the indemnity clause can be construed to include indemnity for liability arising from claims by Price's own employees.  Applying the law chosen by the parties to this issue, the Court concludes that the indemnity clause does include claims by Price's own employees.

Although certain kinds of indemnity provisions are forbidden under Ohio law, such as those contained in construction contracts,[13] those contained in contracts with compensation-paying employers which do not expressly refer to waiver of workers' compensation immunity,[14] and those contained in illegal agreements,[15] the Ohio Supreme Court has opined that indemnity agreements are usually enforceable where specific public policy exceptions are lacking.  *Worth v. Aetna Cas. & Surety Co.,* 32 Ohio St. 3d 238, 241, 513 N.E.2d 253, 257  (Ohio 1987) (citing *Allen v. Standard Oil Co.,* 2 Ohio St. 3d 122, 443 N.E.2d 497 (Ohio 1982)); *Kendall,* 20 Ohio St. 3d at 65, 485 N.E.2d at 1051 (citing *Davis v. Consol. Rail Corp.,* 2 Ohio App.3d 475, 477, 442 N.E.2d 1310, 1312 (Ohio Ct. App. 1981)). Because the Terminaling Agreement here is not one of the forbidden contracts identified by the Ohio Supreme Court, nor have the parties identified a specific public policy that would be violated by its enforcement, this Court concludes that under Ohio law, indemnity agreements of the type involved here are generally valid and enforceable.

In *Allen v. Standard Oil Company,* the Ohio Supreme Court stated the general rule regarding indemnity agreements: "when an indemnitor expressly agrees to indemnify an indemnitee except

---

13.  Ohio R.C. § 2305.31 and *Kendall, supra.*

14.  Ohio R.C. § 4123.82 and *Ledex, Inc. v. Heatbath Corp.,* 10 Ohio St. 3d 126, 461 N.E.2d 1299 (Ohio 1984).

15.  *Cumpston v. Lambert*, 18 Ohio 81 (Ohio 1849).

in certain specified instances and it is determined that the exceptions do not pertain, then the indemnitor is obligated to indemnify the indemnitee under the terms of their agreement."  2 Ohio St.3d at 125, 443 N.E.2d at 500.  In addition, the supreme court has provided the following guidance in construing indemnity provisions:

> Indemnity arises from contract, either express or implied, and is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement.  *Travelers Indemnity Co. v. Trowbridge* (1975), 41 Ohio St.2d 11, 321 N.E.2d 787, paragraph two of the syllabus. . . .  The nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used.  See *Cleveland Window Glass & Door Co. v. National Surety Co.* (1928), 118 Ohio St. 414, 161 N.E. 280.  All words used must be taken in their ordinary and popular sense, *Glaspell v. Ohio Edison Co.* (1987), 29 Ohio St.3d 44, 47, 505 N.E. 2d 264, 267, and "[w]hen a . . . [writing] is worded in clear and precise terms; when its meaning is evident, and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which [it] naturally presents."  *Lawler v. Burt* (1857), 7 Ohio St. 340, 350.

*Worth,* 32 Ohio St.3d at 240-41, 513 N.E.2d at 256.  Moreover, in *Glaspell,* the supreme court distinguished a previous line of cases narrowly construing indemnification agreements against the drafter, noting that such narrow construction was not required when the agreement to indemnify was assented to in a context of free and understanding negotiation.  29 Ohio St.3d at 47, 505 N.E.2d at 266 (citing 15 WILLISTON ON CONTRACTS (1972) 141, Section 1750).  In *Glaspell,* the parties to the indemnification agreement were commercial enterprises of sufficient size and quantity as to give rise to the presumption that they possessed a high degree of sophistication in contractual matters, and that they possessed the financial wherewithal to provide against loss by insurance or other means.  *Id.*, 505 N.E.2d at 267.  Accordingly, the supreme court declined to narrowly construe the indemnity clause before it.  *Id.*

15

Although there are no cases under Ohio law construing the language in an indemnity contract similar to the language at issue here, support exists in Ohio jurisprudence for the general proposition that express or specific language is not required in indemnity agreements, so long as the intent is clear from the terms used.  For example, in considering whether indemnity clauses purporting to indemnify the indemnitee for its own negligence must contain express language to that effect, the Ohio appellate courts have concluded that express language is not required under Ohio law.  *See, e.g., Coulter v. Dayton Power & Light,* 134 Ohio App. 3d at 623-24, 731 N.E.2d at 1174-75 (holding that broadly worded language in an indemnification provision clearly encompassed indemnification for indemnitee's own negligence); *Delco Prod. Div. Gen. Motors Corp.,* 1979 WL 155686, at *4 (holding that general language providing indemnification for "all liabilities, claims or demands for injuries or damages to any person or property growing out of the performance of this contract" clearly and unequivocally included negligence by the indemnitee); *Teledyne Osco Steel v. Woods,* 39 Ohio App. 3d 145, 148, 529 N.E.2d 1271, 1275 (Ohio Ct.App. 1987) (finding intent to indemnify indemnitee for indemnitee's own negligence was shown in the words "however caused").

Turning to the indemnity provision *sub judice,* this Court declines, based on *Glaspell,* to narrowly construe its terms, as both Price and Dravo Lime are commercial entities which are presumed to possess a sufficient degree of sophistication regarding contracts, and each appears to possess the financial ability to provide against loss by insurance or other means.  The enforceability of the indemnity provision can be resolved by looking to the parties' own terms, which are clear and unambiguous in their allocation of the risk of doing business.  Article Thirteen of the Terminaling Agreement provides, in relevant part, that Price will "protect, hold harmless, defend and indemnify Dravo Lime . . .  from and against *all* claims, penalties, fines, assessments, liabilities and expenses,

16

*in any way* arising out of (i) any claims for death or injury to person or property, . . . arising out of any act or omission of Price, its agents, servants, employees, contractors and subcontractors or out of the performance of work pursuant to this Agreement, except as may be caused by the sole negligence of Dravo Lime, its agents, servants or employees."  (Emphasis added.)  It is clear from the use of the terms "all" and "in any way" that the parties did not intend to limit the types of claims for which Price would indemnify Dravo Lime, except for claims caused by the *sole* negligence of Dravo Lime and/or its agents/employees.  In addition, there is no limiting language appearing after the words "any claims for death or injury to person or property," which indicates the scope of the indemnity is intended to include claims for injury by *any* person which arises from Price's or its employees' own negligence or the performance of the work described under the Terminaling Agreement.  Thus, as drafted, Article 13 clearly includes liability imposed on Dravo Lime attributable to claims by Price's own employees.   In addition, the negligence and indemnity/contribution claims against the Dravo parties and any corresponding liability clearly arise out of Butcher's claim for personal injuries which arose on October 5, 1999, while unloading Dravo Lime's lime product from Barge DM-1878, pursuant to the Terminaling Agreement.  Accordingly, the indemnity provision contained in the Terminaling Agreement is valid and may be enforced so long as the Dravo parties are able to prove that Butcher's injuries were not caused by the *sole* negligence of Dravo Lime and/or its agents/employees.[16]

Price argues that notwithstanding the above, this Court should find the indemnity provision

---

16. As the Court noted in its previous opinion (Doc. No. 123), an issue of fact remains as to whether the Dravo parties are entitled to summary judgment on their contractual indemnity claim against Price, because a condition precedent to the Dravo parties' recovery, *i.e.,* the relative fault of the parties, has yet to be established.  If the accident giving rise to Butcher's injuries is determined by the fact finder to have been caused, in whole or in part, by the negligence of any party other than the Dravo parties, then the Dravo parties will be entitled to indemnification from Price.

to be unenforceable because it does not explicitly provide for indemnification for injuries to Price's own employees.  In support, Price submits that the under the applicable law, in order to waive immunity afforded to employers under the LHWCA or under the Ohio workers' compensation statute, broad words of general import are insufficient.  Rather, according to Price, what is required is a "clear and unequivocal" indemnification provision expressly extending to the employer's own employees.  However, as explained above, Ohio law must give way to federal maritime law on this issue, and the latter does not require explicit language to waive the employer's LHWCA immunity.

Moreover, to the extent that Price relies on *Passman* to support its position,[17] such reliance is misplaced for several reasons.  In *Passman,* the complaint lacked any factual allegations regarding whether the plaintiff had applied for and/or received benefits under either the LHWCA or the Pennsylvania Workers' Compensation Act ("PWCA").  Because the employer could potentially show that it paid benefits under either the LHWCA or PWCA, the district court explored both federal maritime law and Pennsylvania law regarding the enforceability of indemnity agreements against compensation-paying employers.  A close examination of the *Passman* court's opinion reveals that it did not require a specific reference to LHWCA immunity in the indemnity clause in order to waive LHWCA immunity.  The district court's discussion merely focused on the absence of any allegations indicating whether the LHWCA even applied, and noted simply that if the stevedore employer had not fulfilled its obligations to plaintiff under the LHWCA, the LHWCA would not immunize the stevedore employer from suit by a non-vessel third-party.[18]  The court in

---

17.  It is unclear to which authority cited on page 4 of its memorandum of law that Price is citing in support of its position, as it has improperly used "<u>id</u>." after stringing citations to five cases (exclusive of parenthetical citation).  However, it appears that Price primarily relies on *Passman.*

18.  In so doing, the district court in *Passman* applied federal maritime law.  *Id.* at *2-3.

*Passman* did not consider the sufficiency of the language of the indemnity provision in its discussion regarding the validity of the waiver under the LHWCA.  Next, the district court turned to a discussion of the PWCA and the requirements for waiving immunity in indemnity agreements with employers under Pennsylvania common law.  At this point in its opinion, the district court did examine the language of the indemnity provision under Pennsylvania law and determined that the language appeared to be insufficient to waive the employer's immunity from third-party suits.  This conclusion is merely *dicta*, however, because the district court also found that it could not determine from the face of the complaint that the employer in fact paid PWCA benefits to the plaintiff, and thus, the employer had not established it was entitled to PWCA immunity from third-party indemnity claims.  *Id.* at *6.  Thus, the court in *Passman* denied the employer/third-party defendant's Rule 12(b)(6) motion because the court could not conclude at that juncture that the employer was entitled to the immunity protection of either the LHWCA or PWCA.  *Id.* Accordingly, since the court's holding in *Passman*, albeit *dicta*, regarding the express waiver requirement was predicated on Pennsylvania law, Price's reliance on *Passman* is misplaced.[19]

Equally unavailing is Price's argument that *Corbitt* and *Foreman* support its position that the indemnity provision here is unenforceable for lack of specificity.  Although those cases are factually distinguishable from the case at bar, the holdings in those cases actually support enforcement of the indemnity provision at issue here.  First of all, the indemnity claim in *Corbitt* did not arise from liabilities imposed under the LHWCA.  Moreover, the court of appeals held that "[a] contract of indemnity should be construed to cover all losses, damages, or liabilities which

---

19.  In addition, applying the express waiver requirement under Pennsylvania to an indemnity agreement under the LHWCA fails for the same reason as did the express waiver of workers' compensation immunity under Ohio law, as discussed earlier.

reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." 654 F.2d at 333. Under this test, the indemnity provision in Article 13 should be construed as entitling Dravo Lime to indemnification from Price for any liability it incurs arising out of Butcher's personal injury claim. As stated above, such a construction is reasonably within the intended scope of the indemnity provision. In construing the indemnity provision in *Corbitt,* the court of appeals noted that there were two kinds of liability that were not within the scope of the indemnity agreements contemplated by the parties, absent express language: (1) where the indemnitor agrees to indemnify the indemnitee for the indemnitee's own negligence, which is not an issue here, and even if it was, the indemnity provision in Article 13 expressly provides for this; and (2) where the liability for which indemnity is sought arises from a separate indemnity agreement, to which the indemnitor was not a party, also clearly not the case here. In both situations, the court of appeals determined the obligation imposed was extraordinary and, as such, required express notice to the indemnitor. *Id.*

Similar to *Corbitt,* the indemnitee in *Foreman* sought indemnification from the indemnitor for liability arising under two separate indemnity agreements. Unlike *Corbitt,* however, one of the indemnity claims in *Foreman* involved an indemnity claim for liability arising out of a LHWCA claim.[20] As to that claim, the court of appeals held that the indemnitee, Exxon, was entitled to

---

20. Because the injury in *Foreman* occurred on an offshore oil drilling platform positioned over the Outer Continental Shelf in the Gulf of Mexico at a point adjacent to the State of Louisiana case, the court of appeals applied Louisiana law to determine the rights and duties of the parties under the indemnity provisions. 770 F.2d at 495 (citing *Mills v. Zapata Drilling Co.,Inc.,*722 F.2d 1170, 1174 (5th Cir. 1983)).

indemnification from Offshore, the employer of plaintiff, for amounts Exxon paid directly to the injured plaintiff.  770 F.2d at 495.  Despite the employer's immunity under LHWCA, the court found the indemnity provision unambiguously required Offshore to indemnify Exxon for liability which Exxon incurred on claims by Offshore's employees for personal injuries resulting from Offshore's negligence. *Id.*  However, the second claim for indemnity raised an issue identical to the one presented in *Corbitt*, and thus, the *Foreman* court held *Corbitt* controlled the outcome there. Based on *Corbitt*, the *Foreman* court held that Exxon was not entitled to indemnification from Offshore for amounts Exxon owed to another party pursuant to a separate indemnity agreement with that party, as the liability arising from the separate indemnity contract was beyond the normal obligation, and thus the intended scope, of the indemnity agreement between Exxon and Offshore. *Id.* at 498.  The court of appeals found that such an obligation was extraordinary and thus required a clear and explicit expression of such intent in the indemnity agreement. *Id.*  Since the indemnity agreement between Exxon and Offshore did not contain such an expression of intent, it was unenforceable vis a vis the amount Exxon paid to the third party pursuant to the separate indemnity agreement.

Clearly, the extraordinary obligations which were found to exist in *Corbitt* and *Foreman* are not present in the case at bar.  Dravo Lime is not seeking indemnification under the Terminaling Agreement for a contractual obligation it has with another party.  Rather, Dravo Lime is seeking indemnification from Price for monies it may be required to pay arising out of injuries to Price's employee, Butcher, which, as explained above, is clearly within the intended scope of the indemnity provision contained in Article 13.  Thus, if anything, *Corbitt* and *Foreman* actually support enforcing the indemnity provision at issue here.

Accordingly, the Court will deny Price's second motion for summary judgment on the Dravo parties' contractual indemnity claims against it.

**IV.**   **CONCLUSION**

For the reasons set forth above, the Court will deny Price Inland's Motion for Summary Judgment (Doc. No. 143) as to the Dravo parties' contractual indemnity claims against it in Civil Action No. 02-1157.

An appropriate order will  follow.

Dated: October 23, 2009                                            BY THE COURT:

                                                                                    LISA PUPO LENIHAN
                                                                                    United States Magistrate Judge

cc:    All Counsel of Record
        Joseph P. Moschetta, Special Master

22